**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INTERCONTINENTAL GREAT BRANDS, LLC,<br><br>               Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>               Defendants. | Case No. 25-cv-5350 |

## <u>COMPLAINT</u>

Plaintiff, Intercontinental Great Brands, LLC ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against the entities identified on Schedule A attached hereto (collectively, "Defendants").[1] In support thereof, Plaintiff states as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., and 28 U.S.C. §§ 1338(a) and 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

---

[1] Plaintiff's trademarks and the names of Defendants are being temporarily withheld to prevent Defendants from obtaining advance notice of this action and Plaintiff's accompanying ex parte Motion for Entry of Temporary Restraining Order and transferring funds out of the accounts that Plaintiff seeks to retrain.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through their operation of, or assistance in the operation of, the fully interactive, commercial Internet stores operating under the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"), as well as the shipment of products offered for sale on those Defendant Internet Stores. Specifically, Defendants are involved in the production, listing for sale, sale, and/or shipping of products to Illinois residents that use infringing and/or counterfeit copies of Plaintiff's federally registered trademarks. Defendants have committed and knowingly participated in the commission of tortious acts in Illinois, causing Plaintiff substantial injury in the State of Illinois.

**INTRODUCTION**

3.     Plaintiff owns and administers the trademark and other intellectual property rights for various snack food brands sold around the world, including the famous ▮▮▮▮ brand at issue in this case, which is manufactured, sold, and distributed by Mondelez International, Inc. ("Mondelez"), Plaintiff's parent company. This action has been filed by Plaintiff to combat online counterfeiters and infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of Plaintiff's ▮▮▮▮ trademarks (the "Counterfeit/Infringing Products"). On information and belief, Defendants create the Defendant Internet Stores by the dozens and design them to appear to be selling authorized products bearing Plaintiff's ▮▮▮▮ trademarks, while actually selling Counterfeit/Infringing Products to unknowing consumers.

4.     The Defendant Internet Stores share unique identifiers establishing a logical relationship between them and reflecting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and/or infringing operations, including changing the names of their stores multiple times, opening new stores, helping their friends open stores, and making subtle changes to their Counterfeit/Infringing Products.

5.     Plaintiff is forced to file this action to combat Defendants' infringement of Plaintiff's Trademarks as well as to protect unknowing consumers from purchasing the Counterfeit/Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's Trademarks and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it is sustaining.

## THE PARTIES

### Plaintiff, Intercontinental Great Brands, LLC

6.     Plaintiff is a limited liability company organized and existing under the laws of the state of Delaware, having a place of business at 100 Deforest Ave., East Hanover, New Jersey 07936.

7.     As stated above, Plaintiff owns and administers the trademark and other intellectual property rights for various global snack food brands which are manufactured, sold, and distributed by Mondelez, Plaintiff's parent company. One of those brands is the famous ███ brand cookies ("Plaintiff's Products"), which were originally brought to market by Nabisco in 1912 and which have long since become famous around the world and are enjoyed by consumers in over 100

3

countries. The Plaintiff's Products offered by Plaintiff and its authorized licensees also include a wide variety of merchandise featuring Plaintiff's ███████ trademarks, including apparel, accessories, and home goods.

8.     Plaintiff's parent company, Mondelez, sells Plaintiff's Products through its own website (███████.com) as well as through authorized online distributors, namely Amazon, Walmart, Target, and Costco, as well as through hundreds of thousands of brick-and-mortar retailers throughout the United States, and around the world. Since 1912, ███████ has become the world's most famous cookie brand (not to mention "███████████████████████") and has branched out with several other ███████ branded products, including ice cream and breakfast cereals to name a few. Based on this proud history, Plaintiff's Products are extremely successful. Since 2018 alone, Plaintiff Products have generated over $9.5 billion dollars in revenue in the United States, and over $21 billion in revenue globally.

9.     Plaintiff also has dozens of registered trademarks with the United States Patent and Trademark Office, including the original ███████ standard character trademark (Reg. No. ███████, registered in 1913 (the "Original ███████ Trademark"), and the contemporary ███████ cookie design (pictured below) (Reg. No. ███████), registered in 2015.



True and correct copies of the U.S. Certificates of Registration for those trademarks, as well as 27 other related trademarks, are attached hereto as Exhibit 1 (referred to herein collectively as the "███████ Trademarks").

10.     The U.S. registrations for Plaintiff's ██████ Trademarks are valid, subsisting, in full force and effect. The registrations for Plaintiff's ██████ Trademarks constitute *prima facie* evidence of the validity of the trademarks and of Plaintiff's exclusive right to use Plaintiff's ██████ Trademarks pursuant to 15 U.S.C. § 1057(b). Plaintiff's ██████ Trademarks have been used exclusively and continuously by Plaintiff (and its predecessors in title) for years and have never been abandoned. Several of the ██████ Trademarks, including the Original ██████ Trademark, have become incontestable pursuant to 15 U.S.C. § 1065. Moreover, Plaintiff's ██████ Trademarks qualify as famous trademarks, as that term is used in 15 U.S.C. § 1125(c), and became famous long before the Defendants' activities described herein.

11.     Plaintiff's ██████ Trademarks are displayed extensively in connection with Plaintiff's Products and have been used in connection with Plaintiff's and Mondelez's marketing and promotion efforts. Since 2018 alone, Plaintiff and Mondelez have spent around $1.4 billion dollars advertising Plaintiff's Products using the ██████ Trademarks globally, with around $543 million dollars on advertising here in the United States. In addition to this extensive advertising campaign, which dates back decades, Plaintiff's ██████ Trademarks have also appeared in countless movies, televisions shows, and news articles. Plaintiff has also partnered with many other famous companies over the years, including co-branded products with ██████, ██████, ██████ and most recently, ██████. Plaintiff also recently introduced a new co-branded line with the popular music artist ██████. Because of these and other factors, Plaintiff's ██████ Trademarks have become not just well-known, but one of the most famous and readily identifiable brands in history.

12.     Plaintiff's ██████ Trademarks are distinctive when applied to Plaintiff's Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to

Plaintiff's quality standards. Plaintiff has ensured that products bearing the ███ Trademarks are manufactured to the highest quality standards. The marketplace goodwill associated with Plaintiff's ███ Trademarks is incalculable and of inestimable value to Plaintiff.

13.     Plaintiff has never assigned or licensed Plaintiff's ███ Trademarks to any of the Defendants in this matter.

**Defendants**

14.     Defendants are individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business or assist in business activity conducted throughout the United States (including within the State of Illinois and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of the Counterfeit/Infringing Products, which use counterfeit and/or infringing versions of Plaintiff's ███ Trademarks. Each Defendant has targeted Illinois by selling or offering to sell or knowingly assisting in the selling or offering to sell, Counterfeit/Infringing Products to Illinois consumers via various online stores, including Alibaba, Aliexpress, Amazon, DHgate, eBay, Shein, Shopify, Temu, and Walmart.

15.     Defendants appear to be an interrelated group of counterfeiters and infringers, who create numerous Defendant Internet Stores and design these stores to appear to be selling authorized products bearing the ███ Trademarks, while they are actually selling the unauthorized Counterfeit/Infringing Products. The Defendant Internet Stores share unique identifiers, such as the following: common design elements, the same or similar Counterfeit/Infringing Products that they offer for sale, similar Counterfeit/Infringing Product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or

similarly priced Counterfeit/Infringing Products and volume sales discounts. The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

16.     Plaintiff's business success has resulted in significant counterfeiting and other infringement of Plaintiff's ███ Trademarks. Consequently, Plaintiff and Mondelez maintain an anti-counterfeiting program and investigate suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. As a result, Plaintiff has recently identified hundreds of fully interactive, commercial Internet stores on various e-commerce platforms, including the Defendant Internet Stores, which are offering Counterfeit/Infringing Products for sale to consumers in this Judicial District and throughout the United States. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and generate over $509 billion in annual online sales in 2016 alone. *See* Exhibit 2, Report concerning "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans dated January 24, 2020, at 4. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2018 was over $1.4 billion. *See* Exhibit 2 at 8.

17.     E-commerce retail platforms such as those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters/infringers to routinely use false or inaccurate names and addresses when registering with these e-commerce platforms. *See* Ex. 2 at 22 (finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and stating that "[s]ignificantly enhanced vetting of third-party sellers" is necessary).

18.     Counterfeiters/infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. *See id*. At 22. While some platforms such as Amazon have recently taken steps to attempt to address these shortcomings, the foregoing deficiencies largely remain.

19.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target U.S. consumers using one or more aliases identified Schedule A attached hereto, offering shipping to the United States, including Illinois, accepting payment in U.S. dollars and, on information and belief, having sold Counterfeit/Infringing Products to residents of Illinois.

20.     Defendants employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Defendant Internet Stores often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use Plaintiff's ███████ Trademarks, and none of the Defendants are authorized to use the ██████ Trademarks.

21.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Defendant Internet Stores by providing false, misleading, and/or incomplete information to e-commerce platforms, including at least Alibaba, Aliexpress, Amazon, DHgate, eBay, Shein, Shopify, Temu, and Walmart. On information and belief, certain Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

22.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit/Infringing Products on e-commerce platforms such as Alibaba, Aliexpress, Amazon, DHgate, eBay, Shein, Shopify, Temu, and Walmart. Such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down or held accountable for their infringement.

23.     Groups of counterfeiters such as Defendants here are typically in communication with each other. They regularly participate in QQ.com chat rooms, and also communicate through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

24.     Counterfeiters such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation in spite of enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court. Here, on information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such off-shore accounts based outside of the jurisdiction

of this Court. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their counterfeiting and other infringement of intellectual property rights.

25.     Defendants' use of Plaintiff's ▉▉▉ Trademarks in connection with the advertising, distribution, offering for sale, and/or sale of Counterfeit/Infringing Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

26.     Plaintiff hereby re-alleges and incorporates by reference all the allegations set forth in the preceding paragraphs.

27.     Plaintiff's ▉▉▉ Trademarks are highly distinctive. Consumers have come to expect the highest quality from Plaintiff's Products offered, sold, and/or marketed under Plaintiff's ▉▉▉ Trademarks.

28.     Defendants have sold, offered for sale, marketed, distributed, and advertised, products using counterfeit and/or infringing reproductions of Plaintiff's ▉▉▉ Trademarks without Plaintiff's permission.

29.     Plaintiff is the exclusive owner of Plaintiff's ▉▉▉ Trademarks. Plaintiff's United States Registrations for Plaintiff's ▉▉▉ Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's ▉▉▉ Trademarks and are willfully infringing and intentionally using counterfeits of Plaintiff's ▉▉▉ Trademarks. Defendants' willful, intentional, and unauthorized use of Plaintiff's ▉▉▉

Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit/Infringing Products among the public.

30.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of Plaintiff's ███ Trademarks.

32.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful advertisement, promotion, offering to sell, and sale of unauthorized versions of Plaintiff's ███ Trademarks.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them, be temporarily, preliminarily, and permanently enjoined and restrained from:

a)     using Plaintiff's ███ Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's ███ Trademarks;

b)     passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of

Plaintiff's and approved by Plaintiff for sale under Plaintiff's ████
Trademarks;

    c)    committing any acts calculated to cause consumers to believe that Defendants' Counterfeit/Infringing Products are sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d)    further infringing Plaintiff's ████ Trademarks and damaging Plaintiff's goodwill;

    e)    manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's ████ Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2)    Entry of an Order that, upon Plaintiff's request, all persons acting for, with, by, through, under or in active concert with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as, Alibaba, Aliexpress, Amazon, DHgate, eBay, Shein, Shopify, Temu, and Walmart, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

    a)    disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using Plaintiff's ████ Trademarks;

    b)      disable and cease displaying all product listings and advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using Plaintiff's ███ Trademarks; and

    c)      take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index;

3)      That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's ███ Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4)      In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 per infringed mark per type of good sold;

5)      That Plaintiff be awarded their reasonable attorneys' fees and costs; and

6)      That Plaintiff be awarded any and all other relief that this Court deems just and proper.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

33.      Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34.      Defendants' promotion, marketing, offering for sale, and sale of the Counterfeit/Infringing Products has created and is creating a likelihood of confusion, mistake, and

deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit/Infringing Products by Plaintiff.

35.    By using Plaintiff's ███ Trademarks on the Counterfeit/Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit/Infringing Products.

36.    Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit/Infringing Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37.    Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of Plaintiff's brand.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)    That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them, be temporarily, preliminarily, and permanently enjoined and restrained from:

a)    using Plaintiff's ███ Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's ███ Trademarks;

b)    passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of

Plaintiff and approved by Plaintiff for sale under Plaintiff's ████ Trademarks;

c)     committing any acts calculated to cause consumers to believe that Defendants' Counterfeit/Infringing Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d)     further infringing Plaintiff's ████ Trademarks and damaging Plaintiff's goodwill; and

e)     manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's ████ Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2)     That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's ████ Trademarks be increased by a sum not exceeding the statutory limit;

3)     Plaintiff's costs and reasonable attorneys' fees;

4)     Both pre-judgment and post-judgment interest; and

5)     Such other and further relief as this Court finds just and equitable.

## COUNT III
## TRADEMARK DILUTION (15 U.S.C. § 1125(c))

38.　Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39.　Plaintiff is the exclusive owner of the ███ Trademarks and Plaintiff's ███ Trademarks are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125(c) and were famous before and at the time Defendant began selling the Counterfeit/Infringing Products.

40.　Long after the ███ Trademarks became famous, Defendants, without authorization from Plaintiff, used unauthorized reproductions, counterfeits, copies, and colorable imitations of the ███ Trademarks. Defendants' use of the ███ Trademarks dilutes and/or is likely to dilute the distinctive quality of the ███ Trademarks and to lessen the capacity of such mark to identify and distinguish Plaintiff's goods. Defendants' unlawful use of the ███ Trademarks in connection with inferior, counterfeit goods is also likely to tarnish the ███ Trademarks and cause blurring in the minds of consumers of the distinctiveness of the ███ Trademarks and their exclusive association with Plaintiff, thereby lessening the value of the ███ Trademarks as unique identifiers of Plaintiff and its products.

41.　At all relevant times, Defendants had actual and direct knowledge of Plaintiff's prior use and ownership of the ███ Trademarks. Defendants' conduct is therefore willful and reflects Defendants' intent to exploit the goodwill and strong brand recognition associated with the ███ Trademarks.

42.　By the acts described above, Defendants have intentionally and willfully diluted, and/or are likely to dilute, the distinctive quality of the famous ███ Trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

43.　Defendants' wrongful acts will continue unless enjoined by this Court.

16

44.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of Plaintiff's brand.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them, be temporarily, preliminarily, and permanently enjoined and restrained from:

a)     using Plaintiff's ▮▮▮ Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's ▮▮▮ Trademarks;

b)     passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's ▮▮▮ Trademarks;

c)     committing any acts calculated to cause consumers to believe that Defendants' Counterfeit/Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d)     further infringing Plaintiff's ▮▮▮ Trademarks and damaging Plaintiff's goodwill; and

e) manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's ████ Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's ████ Trademarks be increased by a sum not exceeding the statutory limit;

3) Plaintiff's costs and reasonable attorneys' fees;

4) Both pre-judgment and post-judgment interest; and

5) Such other and further relief as this Court finds just and equitable.

## COUNT IV
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, et seq.)

45. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

46. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit/Infringing Products as those of Plaintiff, causing a likelihood of confusion as to the source of their goods, causing a likelihood of confusion as to an affiliation, connection, or association with genuine versions of Plaintiff's ████ Trademark, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion among the public.

47. The foregoing acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

48. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to their reputation and associated goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them, be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using Plaintiff's ▮▮▮ Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff be sold in connection with Plaintiff's ▮▮▮ Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's ▮▮▮ Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit/Infringing Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

     d.       further infringing Plaintiff's ███ Trademarks and damaging Plaintiff's goodwill; and

     e.       manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's ███ Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2)      Plaintiff's costs and reasonable attorneys' fees pursuant to 815 ILCS § 510/3;

3)      Such other and further relief as this Court finds just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial on all issues triable as of right to a jury. Fed. R. Civ. P. 38(b).

Dated: May 14, 2025                  Respectfully submitted,

                                          /S/BRANDON BEYMER
                                          BRANDON BEYMER (ARDC No. 6332454)
                                          DALIAH SAPER (ARDC No. 6283932)
                                          SAPER LAW OFFICES, LLC
                                          505 N. LASALLE, SUITE 350
                                          CHICAGO, ILLINOIS 60654
                                          (312) 527-4100
                                          BRANDON@SAPERLAW.COM
                                          DS@SAPERLAW.COM
                                          ATTORNEYS FOR PLAINTIFF